UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE GARRETT, | No. 2:14-cv-2774 DB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1] Plaintiff asserts four claims, including that the ALJ's treatment of medical opinion and subjective testimony constitutes error. For the reasons explained below, plaintiff's motion is granted in part and denied in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On June 3, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See Dkt. Nos. 8 & 10.)

1

("SSI") under Title XVI of the Act alleging disability beginning on February 17, 2006. (Transcript ("Tr.") at 164-71.) Plaintiff's applications were denied initially, (id. at 68-73), and upon reconsideration. (Id. at 82-86.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on February 4, 2013. (Id. at 39-56.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 39-40.) In a decision issued on May 6, 2013, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since February 17, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic lumbosacral train, lumbar degenerative disc disease, status-post surgery, hernia, bipolar disorder, mood disorder not otherwise specified, anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; he could sit, stand and/or walk for six hours out of an eight-hour workday; he could occasionally stoop and crouch; he could frequently climb, balance, kneel and crawl; he is limited to unskilled work; and he is to avoid public contact.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on June 6, 1979 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 17, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 18-28.)

On September 29, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's May 6, 2013 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 25, 2014. (Dkt. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

////

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion plaintiff asserts the following four principal claims[2]: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of the subjective testimony constituted error; (3) the ALJ's treatment of the listing conditions constituted error; and (4) the ALJ's treatment of the Vocational Expert testimony constituted error. (Pl.'s MSJ (Dkt. No. 13) at 17-35.[3])

////

////

---

[2] Plaintiff's motion for summary judgment asserts an additional claim that the ALJ's residual functional capacity determination is incorrect. (Pl.'s MSJ (Dkt. No. 13) at 33-34.) However, that argument is based on the ALJ's treatment of the medical opinion evidence and will, therefore, be discussed as part of plaintiff's challenge to the ALJ's treatment of the medical opinion evidence.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

I. **Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A. Dr. Jennifer Heitkamp**

Here, on January 15, 2013, Dr. Jennifer Heitkamp, plaintiff's treating physician, completed a "Medical Source Statement – Mental Impairments" form. (Tr. at 985-88.) Therein, Dr. Heitkamp noted that plaintiff was first examined on October 17, 2012, and his visits occurred "every few weeks" since that date. (Id. at 985.) Dr. Heitkamp noted plaintiff's medications and that her diagnoses included bipolar disorder type 1 "MRE mixed," and PTSD. (Id. at 985.)

Dr. Heitkamp's opinion listed plaintiff's bipolar disorder symptoms as including "[p]sychomotor agitation," and his PTSD symptoms as including "[a]utonomic hyperactivity,"

1   "[v]igilance and scanning," and "[m]otor tension."  (Id. at 986.)  Dr. Heitkamp also noted that

2   plaintiff's mood was "[a]nxious" and that he had obsessive content-preoccupations.  (Id. at 987.)

3   Finally, Dr. Heitkamp opined that plaintiff was moderately to markedly impaired in several areas

4   of functioning.  (Id. at 988.)

5   The ALJ, however, afforded Dr. Heitkamp's opinion "little weight."  (Id. at 26.)  In

6   support of this decision the ALJ stated that Dr. Heitkamp had "only saw the claimant for a few

7   months," and "did not provide objective clinical or diagnostic findings" in support of the assed

8   functional limitations.  (Id.)  However, although Dr. Heitkamp had only been treating plaintiff for

9   a few months, she was nonetheless plaintiff's treating physician.  See Le v. Astrue, 529 F.3d

10  1200, 1201 (9th Cir. 2008) (physician who saw plaintiff five times in three years was a treating

11  physician).

12  Moreover,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.  In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. . .

19  Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85

20  F.Supp.2d 986, 992 (C.D. Cal. 2000)).

21  The ALJ also found that Dr. Heitkamp's opinion was "inconsistent with the objective

22  findings" showing that plaintiff was "stable on medication," and was "inconsistent with the

23  claimant's admitted activities of daily living . . . ."  (Tr. at 26.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

28  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d

6

1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Moreover, it is not apparent that plaintiff's daily activities are inconsistent with Dr. Heitkamp's opinion. In this regard, plaintiff testified that he spends his days "[l]aying on the couch watching T.V." and "[s]itting up, laying down, watching T.V., taking medication, sleeping, taking naps, trying to rest." (Tr. at 47.) Plaintiff also testified that he is "real anxious," and has "anxieties" and "a lot of fears," upon leaving the house. (Id. at 50-51.)

Accordingly, the court finds that the ALJ failed to offer specific and legitimate reasons supported by substantial evidence for rejecting Dr. Heitkamp's opinion. Plaintiff also challenges the ALJ's treatment of the opinions offered by treating physician Dr. Sultan A. Sultan.

**B. Dr. Sultan A. Sultan**

On November 6, 2011, (Tr. at 828-30), and January 16, 2013, (id. at 989-91), Dr. Sultan completed medical source statement forms in which he "assessed functional limitations that would preclude the claimant from working at the level of substantial gainful activity . . . ." (Id. at 25.) The ALJ gave "little weight" to Dr. Sultan's opinions, asserting that Dr. Sultan "did not provide objective clinical or diagnostic findings to support the functional assessments," and that the opinions were "inconsistent with the objective findings already discussed" in the ALJ's opinion. (Id.) Moreover, the ALJ found Dr. Sultan's opinions "inconsistent with the claimant's admitted activities of daily living . . . ." (Id.)

However, the ALJ makes no reference to any specific activities of daily living, instead simply referring to "activities of daily living that have already been described . . . in this decision." (Id.) In this regard, it is entirely unclear to the court which activities of daily living the ALJ found were inconsistent with Dr. Sultan's opinion. Moreover, it is not apparent that plaintiff's activities of daily living were inconsistent with Dr. Sultan's opinion.

In this regard, the ALJ notes that plaintiff's activities of daily living include "preparing meals, clearing dishes, doing errands," occasional shopping, driving, taking care of his children

7

"and watching television." (Id. at 22.) "'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (quoting Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981)).

Moreover, as noted above, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required . . . ." Embrey, 849 F.2d at 421. In this regard, "[i]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.'" Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" Id. at 632-33 (quoting S.S.R. 96-2p at 4).

Accordingly, "'[i]f a treating . . . doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "An ALJ can meet the 'specific and legitimate reasons' standard 'by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Hart v. Colvin, 150 F.Supp.3d 1085, 1089 (D. Ariz. 2015) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Here, the ALJ simply explains that Dr. Sultan's opinions are "inconsistent with objective findings" that the ALJ discussed elsewhere in the opinion. Given only the ALJ's vague reference to previously discussed objective findings, it is impossible for the court to determine exactly which objective findings the ALJ is referring to or what interpretations the ALJ drew from those objective findings as they relate to Dr. Sultan's opinions.

The court finds that the ALJ failed to offer specific and legitimate reasons supported by

8

substantial evidence for rejecting Dr. Sultan's opinions.[4]  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) ("Here, although the ALJ did attempt to relate the objective findings to Dr. Pettinger's medical opinion, he appears ultimately to have stated that the opinion was not supported by the objective findings.  As we have already discussed, and as our case law clearly establishes, this is not sufficient."); Hart, 150 F.Supp.3d at 1090-91 ("Here, the ALJ concluded that 'the limitations given by Dr. Ransom are contradicted by the medical evidence of record', but the ALJ failed to identify both the specific findings of Dr. Ransom that are inconsistent and the specific contrary medical evidence.  The ALJ's general conclusion is not a sufficiently specific reason for rejecting Dr. Ransom's limitations.'").

### C. Betty Readle, Marriage and Family Terapist

Finally, plaintiff argues that the opinion of Betty Readle, a licensed Marriage and Family Therapist is entitled to "great weight" as "an acceptable medical source under Ninth Circuit precedent." (Pl.'s MSJ (Dkt. No. 13) at 17-18.)  Plaintiff is mistaken.

Acceptable medical sources include "physicians, osteopaths, licensed or certified psychologists and — for relevant impairments in their expertise — optometrists, podiatrists and speech-language pathologists." SSR 06-03p.  "[A] licensed marriage and family therapist, is not an 'acceptable medical source' . . . ." Hill v. Commissioner of Social Sec., 560 Fed. Appx. 547, 550 (6th Cir. 2014); see also Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources"); Crane v. Astrue, 369 Fed. Appx. 915, 919 (10th Cir. 2010) ("Marriage-and-family therapists . . . are not acceptable medical sources"); Brown v. Colvin, No. 2:14-cv-952-EFB, 2015 WL 5601400, at *4 (E.D. Cal. Sept. 22, 2015) ("As a marriage and family therapist, however, Cerillo was not an acceptable medical source.").

////

---

[4] Plaintiff argues that Dr. Sultan's opinions are "consistent with the substantial evidence on record" and, therefore, entitled to "controlling weight." (Pl.'s MSJ (Dkt. No. 13) at 34.)  Plaintiff's conclusory argument, however, does not cite to any substantial evidence in the record and instead simply cites to Dr. Sultan's own opinions.  The court declines plaintiff's invitation to find that Dr. Sultan's opinions should be given controlling weight and will leave that determination for the ALJ on remand.

Accordingly, plaintiff is entitled to summary judgment on his claim that the ALJ's treatment of the medical opinions offered by Dr. Heitkamp and Dr. Sultan constituted error.

## II. Subjective Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the third party statement offered by plaintiff's wife constituted error. (Pl.'s MSJ (Dkt. No. 13) at 25-30.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine, 574 F.3d at 693 (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

### A. Plaintiff's Testimony

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. at 22-23.)  In this regard, the ALJ found that plaintiff's credibility was "diminished" because his allegations regarding the severity of his symptoms were "greater than expected in light of the objective evidence of record."  (Id. at 21.)

However, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").  The Ninth Circuit "has particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

////

The ALJ also discredited plaintiff's testimony because he had "not generally received the type of medical treatment one would expect for a totally disabled individual," finding that "treatment records reveal the claimant received routine, conservative and non-emergency treatment since the alleged onset date." (Tr. at 23.) As noted above, plaintiff's alleged onset date is February 17, 2006. On March 7, 2006, an MRI revealed that plaintiff had an "L5-S1 right paracentral disc protrusion" and an "L5-S1 disc degeneration." (Id. at 390-91.) On June 27, 2006, plaintiff's medications included Norco and OxyContin.[5] (Id. at 397.)

On March 6, 2007, and June 5, 2007, plaintiff received a bilateral L5-S1 transforaminal epidural steroid injection. (Id. at 435, 439.) On September 25, 2007, plaintiff had spinal surgery which included "L5-S1 decompression including discectomy . . . interbody fusion . . . [and] insertion of a PEEK cage." (Id. at 656.) On July 30, 2012, plaintiff was seen at the Sutter Auburn Faith Hospital Emergency Department for "ANXIOUS, DEPRESSED and SUICIDAL THOUGHTS." (Id. at 913.) At that time, plaintiff's medications included Methadone, Soma, Xanax and Klonopin. (Id. at 917.)

Plaintiff was placed on a "5150 hold" and transferred to Telecare Placer County Psychiatric Health Facility where he remained until August 4, 2012. (Id. at 1063.) Plaintiff was prescribed Seroquel and Prazosin. (Id.) On January 15, 2013, Dr. Heitkamp noted plaintiff's medications included Seroquel, Remeron and Prazosin.[6] (Id. at 985.) In this regard, it does not

---

[5] Courts have found that the treatment of pain by medications such as Noro and OxyContin "cannot properly be characterized as conservative treatment." Tollison v. Colvin, No. SACV 14-504 RNB, 2015 WL 226023, at *5 (C.D. Cal. Jan 16, 2015); see also Childress v. Colvin, Case No. 13-cv-3252 JSC, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Aguilar v. Colvin, No CV 13-8307 VBK, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("there is evidence in the record that Plaintiff has been prescribed narcotic pain medications, . . . . It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications").

[6] "Courts specifically have recognized that the prescription of several of these medications connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." Carden v. Colvin, No. CV 13-3856-E, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (listing cases); see also Johnson v. Colvin, No. ED CV 13-1476-JSL (E), 2014 WL 2586886, at *5 (C.D. Cal. June 7, 2014) ("Courts specifically have recognized that the prescription of . . . Seroquel connotes mental health treatment which is not 'conservative,' within

appear that plaintiff's treatment was routine, conservative or non-emergency.

The ALJ also discredited plaintiff's testimony because he "engaged in a somewhat normal level of daily activity and interaction." (Id. at 22.) Specifically, the ALJ noted that plaintiff's daily activities included:

> Preparing meals, clearing dishes, doing errands . . . occasionally going shopping, driving sometimes, and watching television. In function reports, the claimant acknowledged he takes long showers, takes care of his children by changing diapers or helping with homework, picks up garbage, does dishes, washes countertops and table tops, goes out alone, goes to dinner and watches movies with family, occasionally goes to barbecues or birthday parties with his kids, follows instructions fine, he gets along with authority figures, walks to the corner store, takes his two year old daughter to the park, goes to the store, goes to church, goes to boy scout meetings with his kids, makes baby bottles of formula, and reads the Bible. The claimant reported . . . that he dresses himself and handles his own hygiene. He indicated . . . that he cares for his 23-month old daughter, he reads, and he talks to his father every day. At the hearing, the claimant explained that his wife does not work outside the home so both of them are home and she takes care of the children as well.

(Id. at 22.)

The Ninth Circuit, "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability.'" Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper, 815 F.2d at 561 ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold for transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn, 495 F.3d at 639).

---

the meaning of social security jurisprudence.").

1    Here, the ALJ found that the activities noted above "reflect a significant functional
2 capacity and not an individual unable to sustain regular and continuing work," and that "the
3 physical and mental capabilities requisite to performing many of the tasks described above as
4 well as the social interactions replicate those necessary for obtaining and maintaining
5 employment." (Tr. at 22.)  The ALJ, however, failed to offer any further elaboration or
6 explanation.  Moreover, it is entirely unapparent to the court how activities such as taking long
7 showers, watching television, changing diapers, walking to the corner store, engaging in hygiene,
8 etc., meet the threshold for transferable work skills.

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

13 Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012); see also Garrison v. Colvin, 759 F.3d 995,
14 1016 (9th Cir. 2014) ("The ability to talk on the phone, prepare meals once or twice a day,
15 occasionally clean one's room, and, with significant assistance, care for one's daughter, all while
16 taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is
17 consistent with the pain that Garrison described in her testimony.  It is also consistent with an
18 inability to function in a workplace environment."); Orn, 495 F.3d at 639 (reading, watching
19 television and coloring "do not meet the threshold for transferable work skills"); Howard v.
20 Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) ("to find Howard's claim of disability gainsaid by
21 his capacity to engage in periodic restricted travel, as the Council seems to have done, trivializes
22 the importance that we consistently have ascribed to pain testimony"); Dickey v. Colvin, 74
23 F.Supp.3d 1118, 1130-31 (N.D. Cal. 2014) (playing video games, watching television, driving,
24 and hanging out with friends "so undemanding that they cannot be said to bear a meaningful
25 relationship to the activities of the workplace").

**B.  Testimony of Plaintiff's Wife**

27    The ALJ also rejected the third party statements offered by plaintiff's wife. (Tr. at 22.)
28 The testimony of lay witnesses, including family members and friends, reflecting their own

14

observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Here, plaintiff's wife completed three separate "FUNCTION REPORT-ADULT-THIRD PARTY" forms, in which she stated that plaintiff's ability to function was extremely limited in many respects. (Tr. at 219, 269, 299.) The ALJ found her statements "only credible to the extent that her statements [were] consistent with the conclusion the claimant can do the work described" by the ALJ's opinion. (Id. at 22.) In this regard, the ALJ found that plaintiff's wife was not "unbiased," because her statements were not "given under oath," she was "not a medical professional . . . competent to make a diagnosis or argue the severity of the claimant's symptoms," and because she had "a financial interest in the claimant receiving benefits." (Id.)

The reasons offered by the ALJ, however, are true of a vast number, if not the majority, of third parties who complete the function report form—a form approved by the Social Security Administration—and are not germane to plaintiff's wife. In this regard, the mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; see also Smolen, 80 F.3d at 1289 ("the same could be said of any family member who testified in any case"). "Clearly, family members who see the claimant on a daily basis are competent to testify as to their observations." O'Bosky v. Astrue, 651 F.Supp.2d 1147, 1163 (E.D. Cal. 2009).

The ALJ went on to state that "[m]ost importantly, the clinical or diagnostic medical evidence . . . does not support her statements." (Tr. at 22.) As discussed above, it is far from clear that the ALJ's conclusion is accurate. Moreover, the fact that medical records do not corroborate the statements does not provide a proper basis for their rejection. Smolen, 80 F.3d at 1289; see also Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could

15

the ALJ discredit her lay testimony as not supported by medical evidence in the record."); Stillwater v. Commissioner of Social Sec. Admin., 361 Fed. Appx. 809, 812 (9th Cir. 2010) ("More, specifically, the ALJ found the lay testimony credible, yet gave the testimony no weight because the lay witnesses were not medical experts and their opinions were 'not supported by the entire evidence.' We have specifically rejected this approach.").

Accordingly, the court finds that plaintiff is entitled to summarize judgment with respect to his claim that the ALJ's treatment of the subjective testimony constituted error.

### III. Listing Impairment

Plaintiff argues that the opinions of Dr. Heitkamp, Dr. Sultan and therapist Readle identify symptoms that "meet or medically equal listing requirements." (Pl.'s MSJ (Dkt. No. 13 at 31-32.)

At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828 (9th Cir. 1995). The Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). If a claimant shows that his impairments meet or equal a Listing, he will be found presumptively disabled. 20 C.F.R. §§ 404.1525-404.1526, 416.925-416.926.

As noted above, the court finds no error with respect to the ALJ's treatment of the opinion offered by therapist Readle. Although the court does find error with respect to the ALJ's treatment of the opinions offered by Dr. Heitkamp and Dr. Sultan, it is not clear from the evidence of record that the ALJ was required to afford those opinions controlling weight.

Accordingly, plaintiff's motion for summary judgment is denied as to this claim.

### IV. Vocational Expert Testimony

Plaintiff argues that the ALJ "failed to consider her own complete hypothetical" to the Vocational Expert ("VE") in determining whether jobs existed that plaintiff could perform. (Pl.'s

1  MSJ (Dkt. No. 13) at 35.)  In this regard, plaintiff argues that the ALJ first asked the VE whether
2  jobs existed in the national economy for an individual with plaintiff's residual functional
3  capacity, to which the VE testified that there were such jobs.  (Id. at 35.)  The ALJ then asked the
4  VE if an individual could perform those jobs while missing work three or more times a month and
5  the VE replied that no such jobs were available.  (Id.)

6  While an ALJ may pose a range of hypothetical questions to a VE based on alternate
7  interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the
8  ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC
9  assessment, must account for all of the limitations and restrictions of the particular claimant.
10 Bray, 554 F.3d at 1228.  "If an ALJ's hypothetical does not reflect all of the claimant's
11 limitations, then the expert's testimony has no evidentiary value to support a finding that the
12 claimant can perform jobs in the national economy."  Id. (citation and quotation marks omitted);
13 see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011)
14 ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments,
15 the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's
16 findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ("Since the analysis
17 of RFC was flawed and not based on the whole record, the VE's testimony based thereon has no
18 evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not
19 based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these
20 functional abilities must be considered very carefully to determine its impact on the size of the
21 remaining occupational base of a person who is otherwise found functionally capable of light
22 work.").

23 Here, the opinion of plaintiff's treating physician, Dr. Heitkamp, which the ALJ
24 improperly rejected, indicated that plaintiff's ability to complete a normal workday and work
25 week without interruptions was markedly impaired.  (Tr. at 988.)  The ALJ's RFC, however, does
26 not account for this limitations.  Thus, it appears that the hypothetical question relied upon by the
27 ALJ failed to account for all of plaintiff's limitations and restrictions.
28 ////

Because the hypothetical question to the VE relied upon by the ALJ did not reflect all of plaintiff's limitations, the ALJ could not rely on the VE's testimony to make the determination that plaintiff was able to perform jobs that existed in the national economy. See Bray, 554 F.3d at 1228 ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."); Werthy v. Astrue, 882 F.Supp.2d 1202, 1235 (D. Or. 2011) ("The ALJ's hypothetical question to the VE, although consistent with the ALJ's RFC assessment, failed to include all of Werthy's limitations and restrictions. The ALJ therefore could not rely on the VE's testimony to make a determination that Werthy is able to work."); see also Robbins, 466 F.3d at 886 (in posing a hypothetical to VE "an ALJ is not free to disregard properly supported limitations").

Accordingly, the court finds that plaintiff is entitled to relief with respect to his claim that the ALJ's treatment of the VE's testimony constituted error.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, because of the ALJ's numerous errors, and the multiple conflicting medical opinions, the record in this action is unclear and ambiguous, and this matter must be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 13) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (Dkt. No. 17) is granted in part and denied in part;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

Dated: March 10, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DLB1\orders.soc sec\garrett2774.ord